, and  think we have 20 on this one. Thank you. May it please the court. Once again, my name is Luke Busby and I represent appellant Michael Irwin. I'd like to reserve five minutes for rebuttal if I may, Your Honor. Yes. Thank you. At the outset, it is important to address the foundational question that runs through every aspect of this case. Whether the defendants can avail themselves of the Washoe tribes sovereign immunity to avoid answering for their individual conduct. The answer under controlling authority is plainly no. Supreme Court resolved this question in Lewis v. Clark, where the court held the tribal sovereign immunity does not extend to suits against tribal employees and their individual capacities, where the judgment will not operate against the tribe. The court further held that indemnification provisions as a matter of law extend sovereign immunity to individual employees do not extend sovereign immunity to individual employees who would not otherwise fall under its protective cloak. This very court applied Lewis and acres bonusing versus Martson and held that extending tribal sovereign immunity to individual defendants merely because they were sued for conduct within the scope of their employment would be at odds with Lewis. Mr. Irwin's claims seek monetary damages solely from the individual defendants in their individual capacity. Any judgment in this case will not operate against the tribe under Lewis and acres bonusing. Sovereign immunity provides no shield here. Well, I mean, it'll operate against the tribe in the sense that they may have taken on the obligation to pay the judgment. But your view is that under Lewis v. Clark, that doesn't help the tribe here. That is our view, Your Honor. I think that issue was explored at length in acres bonusing. I actually went back and listened to the oral arguments in that case before this court, and there were very similar issues. And in that case, the court held that any case against a tribal employee will have some valence of effect on a tribe, but that's not really the question. The question, as framed by Lewis v. Clark and framed very starkly, was that if the judgment does not operate against the tribe, then the tribe is not the real party in interest in the case. We believe the most significant error below was the district court's grant of the motion to dismiss on the basis they were titled to absolute immunity under Title 33 of the Washoe tribes law and order code. The district court acknowledged that the tribe used the phrasing sovereign immunity rather than absolute immunity in Title 33, but nonetheless concluded that it immunized tribal officers and employees for damages arising for any work they do for the tribe. The court applied this provision to shield defendants solely because they were tribal employees performing their official duties, identifying no other rationale for the grant of absolute immunity. This holding is nothing more than a relabeling of sovereign immunity as absolute immunity, and it cannot survive scrutiny under Lewis and Aker's bonusing. Nowhere in Title 33 of the code does the document mention or reference absolute immunity. It speaks exclusively in terms of sovereign immunity. The immunity the defendants seek to invoke stems directly from the tribe's inherent sovereign status, and the very source of immunity that the Supreme Court in Lewis and in Aker's bonusing, this court in Aker's bonusing, has already rejected as a basis for shielding individual capacity defendants. Well, putting aside the question, which I will certainly be directing to your friend, about whether they're making the following type of immunity claim, they certainly could claim immunity under Nevada law, yes? They could. They could assert that they're entitled to it. I'm not saying they could win, but they could assert that they're entitled to it, right? I think they could assert that they're entitled to absolute immunity insofar as the concept is well-defined in Nevada law. And we're talking about what I may be, and my apologies to the Nevada Supreme Court if I get the descriptor wrong, but the functional inquiry test? Yes, Your Honor. And this would be under the second judicial district court case from 2002 primarily? That is correct, Your Honor. And it's not dissimilar from the way that federal courts look at absolute immunity issues.  And that's kind of where the conceptual confusion in this case arose. And they cite a lot of federal cases. Indeed, Your Honor. Yeah, Burke specifically, I believe, if I'm recalling correctly. Butts, maybe? Sorry. Yes, that's it. But when you do an absolute immunity analysis, there's two basic questions under either the federal or the Nevada system. Who are you suing? What's their job? Are they a judge? Are they a prosecutor? And what's the behavior that's complained about? And under an absolute immunity analysis, you cannot sue a judge or a prosecutor for judging a case or prosecuting a case. They're immune, right? But if a judge does something entirely outside of the scope of judicial function, then they can be sued despite absolute immunity if it has nothing to do with their judicial functions. Same with prosecutors. If a prosecutor, God forbid, discriminates unlawfully against someone in their office in an employment context, they can be sued for that because it's not a prosecutorial function. And that same test is described in Davis v. Lachelle, you know, and the concept just has – That's the Navajo case? Yeah, I believe it is. Yeah, I believe it is, Your Honor, on which we provided supplemental briefing. And the – Mr. Grusby, would we be applying federal common law or Nevada law to this question of absolute immunity in your view? I know you're saying the outcome may not alter, but I'd like to know what you think is the applicable law. Your Honor, our view on that issue, which the court granted us supplemental briefing to describe, is that it's an eerie question, pardon the pun, that it's a substantive issue of law. So for the federal claims, you would apply federal law. And for the state law claims, you would apply state law claims on the immunity question. And we think it's clear under this court's jurisprudence that immunity questions are substantive questions of law, not procedural. Because we filed several federal claims in this case, it's a very large case, including civil rights claims, the court has primary federal jurisdiction over those claims. Under Nevada v. Hicks, a bunch of other cases. It has supplemental jurisdiction over the state law claims. Because they're pendent, they're involving the same transaction or occurrence. So our view is that if the court is going to look at the immunity question under the Davis v. Hotel rubric, that it needs to do so differently for one defendant in this case, who's Gene Burke. He was the general counsel for the tribe. The other defendants are all tribal officers. We don't think there's any colorable argument at all for absolute immunity for them in this case. They're not prosecutors. They're not judges. They're police officers engaged in administrative functions related to employment. Now, Mr. Burke, he is general counsel for the tribe. So under the Davis case, he checks the first box. Is he involved in the judicial process? Is he available to avail himself of judicial or quasi-judicial immunity? Arguably. Well, that argument falls apart on the second prong, which is what was he doing? And as we've alleged in the complaint, and these are disputed issues of fact based on what I'm seeing in the briefing, we allege that Burke really had nothing to do with the grievance process. We allege that he inserted himself into this process and denied Mr. Irwine the right to grieve his case, challenging his termination. Now, how does Mr. Irwine know that Burke had nothing to do with the process? What's the basis for that allegation? The basis for that allegation is that, as described in the first amended complaint, he'd gone through it before, and Burke essentially had nothing to do with it. So, and he also, we also describe in the complaint a conversation with Chairman Smoky where Mr. Irwine says, hey, you know, I've been terminated. This is a problem. Smoky, we allege, said, you know, I'm not aware of it, and that it was unusual for Burke to be involved at that point. So, on the question of quasi-judicial immunity, accepting the well-pledged, hopefully well-pledged facts is true at this point in the proceedings. We believe dismissal would be inappropriate. Immunity is a threshold issue, granted, but where there's disputed issues of fact on that issue and well-pledged allegations to support a claim, that these actually weren't things, you know, that Mr. Burke was involved in on a typical day-to-day basis, not part of his regular job. He kind of inserted himself in this process, we allege, improperly, that that should be a question for the jury. There could be a separate question of qualified immunity, but the district court did not reach that question. Is that right? Correct, Your Honor. Significant, a significant amount of the briefing was dedicated to distinct challenges to the claims based on 12b-6, which the court can review de novo. We don't think the record is developed sufficiently to enable that to really occur fairly in this case. You know, you want those issues to be fleshed out typically, I think, at the district court level for a district court to rule on a qualified immunity issue or a claim sufficiency issue before dealing with it for the first time on appeal. Judge Due's opinion was limited to, you know, the two really fundamental logistic ability questions, which are, you know, is there sovereign or is there some kind of immunity that applies in this case, and whether the tribe is a necessary party in this case. I wanted to actually, unless there are questions about this, but why is the tribe not a necessary party with, you know, I think the defendants are alleging that this type of action would interfere with their ability to administer, you know, policing and other internal things that are intrinsic to the tribe. Your Honor, I think the acres bonus in case is really where I went for guidance on this issue is how the court might see it. They observed any suit against a tribal employee for conduct in the course of their official duties inevitably has some connection, you know, to tribal government. And if that were the test, the court would end up applying tribal sovereign immunity whenever a tribal employee acted within the course and scope of their employment was involved. But that's what this court said, you know, Lewis said not to do. And the fundamental question under Lewis and Rule 19 in our mind is who is Mr. Irvine seeking a judgment against? You know, but in Lewis, it was just a casino driver, you know, driving and gets into a car accident. Here we're talking about policing within the tribe. And I take your point. I think acres bonus says not just anything, but there's a little bit more meat to the potential interference with the tribe here, isn't there? Your Honor, that's alleged by the opposing party. But we actually our position is that what the defendants did was actually go against tribal policy. They didn't. And so that argument, we don't think this should be seen as particularly persuasive because Mr. Irvine alleges he was wrongfully fired. All he wanted to do was grieve his termination, which he was allowed to do under their own rules. And he wasn't allowed to do so for unexplained reasons. That being the case. Is it I mean, I'm sorry to interrupt. Is it your argument that because you're not disputing the rules themselves, you're just trying to gain relief from them, that that doesn't interfere with the tribal policy and therefore doesn't make the tribe a necessary party? Exactly, Your Honor. And I think the underlying kind of premise of that argument is that Mr. Irvine really has no issue with the tribe. He doesn't want to sue them. He doesn't think the tribe itself did anything wrong. He wanted to avail himself of the tribe's process, but was prevented from doing so in a tortious way, in a way that we allege violated Mr. Irvine's constitutional rights by the defendants. And that being the case, we don't, you know, from our view, Mr. Irvine's actually supporting the tribe. Because he's trying to ensure that there are rules about how police are treated when they're subject to discipline or fairly applied. Mr. Irvine is in a unique position as a plaintiff in this case because there's, as described in the First Amendment complaint, it's a long series of events that have led him to this place. But there's lots of facts to show that Mr. Irvine's a great cop. And he was repeatedly challenged administratively because of his willingness, essentially, to report the misconduct of fellow officers when he was essentially a very young police officer. And that's dogged him repeatedly throughout his career. And we think forms the basis for the motivation for what occurred to him at the tribe. Why not just let him grieve his case? Makes no sense to us whatsoever. If he did something wrong and, you know, the Tribal Grievance Committee determines that that's the case, fine. But the defendants, by foreclosing that when he's clearly entitled to take advantage of it, we think engaged in conduct that goes beyond any tribal policy, you know, there's nothing that we think the tribe did to direct them to do this that would justify it. And, again, this is a case that's at an early stage in litigation. We haven't conducted, you know, a lot of discovery. We don't know exactly what occurred at the tribe, who was saying what to whom. So, for example, the allegations or the assertion that, hey, if Mr. Irvine was okay, why didn't the tribe just hire him back? I think that was in the supplemental briefing. Well, maybe, you know, we don't know. Mr. Irvine never heard back from Tribal Chairman Smokey after he brought up the issue. Hey, you know, I've been terminated. I think it's wrong, and Burke won't let me talk to anybody. So, you know, we don't know. I think it's unfair to assume facts based on those suppositions about his current employment one way or the other. At that, I'd like to reserve the remainder of my time for rebuttal, if I may, Your Honors. Yes. Good morning, Your Honors. Leonard Powell on behalf of Tribal Appellees. May it please the Court. Tribal immunity bars appellant suit. I'd like to begin by addressing absolute immunity, but I also want to address qualified immunity and Rule 19 as well because any one of these bases is sufficient to affirm the judgment below. So starting with absolute immunity, this case bears a striking resemblance to the facts in Davis. Appellant is a former Tribal employee. He sues his former Tribal supervisors, and he seeks to hold them liable for performing Tribal personnel management functions. That was the exact type of suit at issue in Davis, and under Davis, absolute immunity applies. Counsel, I don't understand how you can argue that Davis stands for what you say it stands for in light of Lewis v. Clark. And it seems to me very clear that in Lewis v. Clark, the Court said, for example, although Tribal sovereign immunity is implicated when the suit is brought against individual officers in their official capacities, it is simply not present when the claim is made against those employees in their individual capacities. And we have never held that a civil rights suit under 1983 against a state officer in his individual capacity even implicates the 11th Amendment or the state's sovereign immunity. I mean, how doesn't Lewis sort of just bar that argument from the start? So the first thing I want to make clear, because Appellant goes straight past this point, which is although we have raised the sovereign immunity argument, we are primarily relying on official immunity and Rule 19, and we don't think you need to address the sovereign immunity argument. We think that Lewis was a sovereign immunity decision, not an official immunity decision, that it was essentially a law school 101 type decision. Courts for decades had been properly recognizing the distinction between sovereign immunity and official immunity in the context of state and federal immunity. But for whatever reason, they had gone astray in the area of tribal immunities. And Lewis corrected that while recognizing that officials may still be able to recognize, may still be able to raise official immunity defenses. And then this court's decision in Acres 1 confirmed that official immunity defenses can be asserted. And in fact, it dismissed some of the claims there on absolute immunity grounds, remanded for other official immunity defenses to be considered. And ultimately, in that case, all of the claims were dismissed, most of them on official immunity grounds. Now, I know that this court's supplemental briefing order teed up the question of whether Davis is binding or persuasive authority. And to be sure, Davis arose in a diversity posture. But the key holding from Davis that we are relying on is its first one, which is that tribes may accord absolute immunity to their officials within areas of tribal control. That holding was a federal law holding. Davis noted that when discussing that issue, that Indian affairs is an area of federal domination, and it relied on federal cases to reach that holding. Because states can't, but tribes can. I'm sorry, Your Honor, I don't. States can't confer that type of immunity, but tribes can. So states can confer it as to state law claims. They cannot as to federal law claims. Congress can as to federal law claims. And the default rule, in fact, is that even both state and federal officials will have qualified immunity, of course. Yes, certainly qualified immunity. But with regard to 1983 claims, there isn't absolute immunity, right? For claims against individuals in their individual capacities? That's correct. And I'm glad you picked up on Section 1983 because I think it illustrates why the principles will be so different between states and tribes in this area, which is the entire civil rights regime was enacted primarily to ensure enforcement of constitutional guarantees that were implemented during the Reconstruction era in order to curb states' civil rights abuses. But Congress has made a completely different choice for tribes. It has created a separate and more limited civil rights regime. Do you believe Nevada law has any role here? So we do not think that Nevada law has any role. I mean, you could decide that Nevada, as a matter of comedy, would recognize this immunity and dodge the question as to the state law claim whether Nevada would have to recognize it. But you're not asking us to do that. You're asking us to say that this is immunity under federal law, and you are not claiming any functional inquiry immunity under Nevada law? No, we are not. We do think it is a discretionary function. I want to be clear on that. But I want to make sure that there's no question that Davis decided some issues of Arizona law, right? I think that the last issue, the comedy issue. But you are not making any claim here for any immunity that arises under Nevada law? That is not the basis that Judge Dew ruled on in that. We haven't presented that claim because we think it is tribal immunity, a question of federal law that applies, and that it can't be diminished by the states. And if I could make a point about another reason why we understand tribal immunity. Let me interrupt you for one second. What about for Mr. Burke? There's a state law claim asserted against him. Right. So, yeah. And so there's two things I'd like to say in response to that. The first is that I think you may well find at the end of this that there ends up not being any jurisdiction left as to that claim. I think if you really go through the analysis, you find that at least one of these doctrines bars the federal claims. You don't ultimately need to decide as to the state law claim whether the immunity analysis would be different from the federal claims. Because once you knock out the federal claims against Burke and against the tribal police officers, there's no longer going to be supplemental jurisdiction over that state law claim. And you can dismiss it on that basis. I wanted to answer my colleague's question under the hypothetical that we're not going to agree with you on federal law, if we were to get to that point. So, certainly. And I didn't mean to avoid the question by any means. So, as to the state law claim, a tribe can choose to assert state immunity. We see that, for instance, in the Modoc case. But the tribe has its own immunity under federal law principles. And that can't be diminished by the states. And I think it's important to understand that, ultimately, sovereign immunity and official immunity are both aspects of a tribe's sovereignty. That is how the Supreme Court described official immunity. For instance, in Shure, it said, the concept of the immunity of government officers from personal liability springs from the same root considerations that generated the doctrine of sovereign immunity. Tribal sovereign immunity routinely bars state law claims. It follows that tribal official immunity, likewise being this common law aspect of sovereignty that tribes retain, also applies against state law claims when it is properly asserted, as we think it is here. If there are no further questions. Let me ask this. So, you agree that federal common law would apply. But we would not look to a functionality test for the absolute immunity issue. You would say that so long as the tribe asserts immunity on behalf of its officers, that's the end of the story. Within areas of tribal control, I think that is a really critical limitation on the rule that Davis recognized. Areas of tribal control are places where the Supreme Court and Congress have always recognized that the need for protection at its highest and tribal power is at its apex. So it is those areas where tribes retain this authority to extend their immunity to the full force. And Davis makes clear that includes personnel management functions. It could also include, for instance, administering elections or determining who is a member of the tribe. These are things that are internal to the tribe and critical to tribal self-determination. Why wasn't that a determinative factor for Lewis v. Clark? I'm trying to square what you're saying with how the Supreme Court addressed Lewis v. Clark. I appreciate that question. So first, I would say it wasn't an area of tribal control. Davis itself, when describing area of tribal control, talks about tribal control or internal relations. Lewis is an off-reservation commercial action. And there's nothing about that that is internal to the tribe or related to tribal self-governance. But that really had no bearing on the analysis. I mean, the Supreme Court was really relying on the distinction between official capacity and personal capacity suits. So, you know, nowhere do I remember hearing that, well, because this happened outside of the tribal jurisdiction, that changes the analysis. That didn't come up in acres bonusing either. So where do we draw that precedent in order to assess these existing lines of authority? Can I add something to your question? Is that okay? Yeah, please. And to quote one part of Lewis, although tribal sovereign immunity is implicated when the suit is brought against individual officers in their official capacities, it is simply not present when the claim is made against those employees in their individual capacities. So, you know, I don't want to repeat a point, but I want to make sure I'm clear that I think Lewis raises some good questions about sovereign immunity defenses. When you're talking about individual officers and you're talking about sovereign immunity, most of the time it will fail. And we think it still should succeed here, but that's not the primary argument. Let me go with one more with acres bonusing. I mean, the suit was literally against tribal judges and the court system. I mean, I can't think of something more ingrained with tribal issue than that. And yet, because of the nature of the personal capacity suit, that is how the panel analyzed that issue. If if you're correct in what you're saying, then wouldn't tribal sovereignty may have wiped away the ability to to even bring those claims at all. But the thing I think I would highlight about acres is that it did apply absolute immunity and it did bar the claims, even though found sovereign immunity didn't apply, which is why I'm not trying to overemphasize the sovereign immunity argument here, though I'd also note that Lewis specifically cited Davis distinguished it. Sorry. So as I understand, sovereign immunity off the table. But in talking about absolute immunity, I think what you're trying to say is if the tribe decides to accord immunity to its officers, to its employees, then all of them should be entitled to absolute immunity. And we never look at a functional test, but that's not how acres bonusing played out. Well, in that case, there was no claim that they that the tribe had expressly conferred. I think that in the absence of the tribe expressly conferring it, then you do do the functional test under the ordinary principles. And tribes face a difficult choice when they are deciding whether they're going to confer absolute immunity within areas of tribal control, because they face competing considerations. You haven't seen this issue arise a ton, I think, because many tribes don't decide actually to extend it to the full capacity. On the one hand, they are going to be concerned about the reasons immunity exists in the first place, harassing lawsuits that interfere with tribal governance. But they're also going to be concerned about over insulating their officials because they don't have any reason to want bad internal actors to get away with doing things that are problematic. They share an interest in justice, like all governments do, for persons within their care and protection in any way. And they, from the perspective of effective governance, if bad actors run amok within a tribal government, that's going to harm the tribal government. It's going to undermine the effective administration's laws, and it's going to make it harder for a tribe to recruit good talent because good employees will not want to work for bad supervisors. So tribes have to make a choice. Do they rely only on their internal things, like grievance procedures, like a tribal court? And there is a tribal court here. There is tribal laws that could be invoked. Or do they also invite the state and federal governments into these areas of tribal control? I might turn to qualified immunity because I see my time is – Can you turn to necessary party? Yes, absolutely, Your Honor. Why do you believe the tribe was a necessary party here? So I think that the tribe is a necessary party because of how the complaint is pled. My friend on the other side said that Mr. Irwine has no issues with the tribe, that he's trying to vindicate the tribe's interests. Of course, the tribal amicus brief contests that claim, and it's really the tribe's asserted interest here that's at stake, not any interest we say it has. It's the claim the tribe's made. But looking at the First Amendment complaint, we do see that Irwine, in moments of candor, admits that this is a very unusual case where he's really focused on what the tribe has done. And I didn't cite these in the brief, so I want to make sure to get them out. Paragraph 324 of the amended complaint, which is at page 483 of the record, he says, the Washoe tribe terminated Irwine for refusal to engage in conduct that Irwine, in good faith, reasonably believed to be illegal. Was it the Washoe tribe, the employer? Yes. He says, page 335, the Washoe tribe terminated Irwine in bad faith. Paragraph 342, the Washoe tribe, wrongfully and in bad faith, breached this contract and terminated Irwine. And paragraph 343, the conduct by the Washoe tribe was malicious and oppressive and further motivated to destroy Irwine's career in law enforcement. So this really is not about individual actions. The tribe's actions are just as much at stake as my individual clients. And we also see that in the description of the conduct here. There are multiple times we see there are many actors involved that are not just my clients. We see at paragraph 141, you know, and my friend on the other side sort of alluded to this when he said Mr. Irwine had gone through the grievance process before. The first incident involving the alleged conduct, the alleged disparate treatment between a Native American officer and Mr. Irwine, that did go through the grievance process. And the HR department, the relevant board, ultimately upheld the performance improvement plan. We see that at paragraph 141. As to whether he was stymied from using the grievance process, he alleges at paragraph 165 that he did alert HR and HR confirmed that it was outside of time for him to file. Sort of anybody who's trying to get damages for wrongful termination, same would apply. If you are talking about whether a tribe itself is compliant with its own procedures and your own allegations are. There's no relief he can get against the tribe, right? That's correct. Sovereign immunity will bar that. So he can't get any relief against the tribe. He can get money from individuals. In the federal court. I mean, I think also on qualified immunity, he won't. No, I understand. But I mean, if he succeeds, he gets money judgments against people. I'm not sure I fully understand your honor's question. The relief he would get if he were to win. Ah, I see. So there I'd like to really underscore the difference between the real party and interest test for sovereign immunity and the required party test prescribed by Rule 19, because they are really distinct from each other. If you can show someone is a real party and interest, they will be a necessary party, I think. But the vice versa is not true. You can often be a required party without being the real party and interest. This court has phrased it as follows. The question. I'm sorry. So the Supreme Court has said that when a sovereign is a required party to a suit against one of its officials, this is from Samantar v. Yusuf, and the site is 560 U.S. at pages 324 to 325. The district court may have to dismiss the suit regardless of whether the official is immune. And when we see the phrasing between the two inquiries, sovereign immunity is a very remedy-focused analysis. In Ager's bonusing, this court said the question is whether any remedy will operate against the sovereign and the critical inquiries who may be legally bound by the court's adverse judgment. But when this court has talked about Rule 19, a necessary party, and when the Supreme Court has talked about it, the language has been far broader. This court has said in EEOC v. Peabody, by definition, parties to be joined under Rule 19 are those against whom no relief has been formally sought but who are situated as a practical matter so as to impair their ability to protect their interests. You don't need to show that their interests will actually be harmed. You have to show that, practically speaking, their interests could be harmed and, more importantly, that their interests could be undermined by not being able to participate in the proceedings. And then as to the question as to whether monetary – How could the tribe's interests be harmed under that – applying that law? Yeah, so I think that at bottom, the gist of this suit is that the tribe did not comply with its own procedures and invalid and fired him without proper cause. I think that, in fact, he did get to use the grievance process as claimed by his own allegations. He provides what he says was the grievance procedure. It has sort of an opt-out where the chairman can sort of go to the HR committee and override whatever was done. And he says he did talk to the chairman, and then nothing happened. And he also says no other tribal official acted on it. So it really goes to everything. Finally, as to qualified immunity, I'd just like to say we think that the facts are undisputed there. The law is clear in the sense that it's very unclear he has a cause of action as to any of these matters. And so we ask the court to affirm, not remand. I think we'll just be back here in a year on qualified immunity and the exact same record. Thank you. Thank you, Your Honors. I'll be brief. Turning to the Rule 19 issue, the district court found that the claims raised by the plaintiff would necessarily involve review of the tribe's employment policies, thus directly implicate the tribe's ability to govern its internal affairs. But there's nothing in the relief sought by Mr. Irwin that does anything like that. He's seeking damages from individuals. He's not seeking injunctive relief against the tribe. He's not seeking injunctive relief against the defendants. He's simply seeking damages for their failure to follow the tribe's own policies. And as Your Honor pointed out, of course it's the tribe. He was terminated from employment from the Washoe tribe based on the actions that were complaining about of the defendants. We didn't sue the tribe. Muddying the waters on that by pointing out specific instances where we describe that he was actually employed by the tribe I don't think assists in clarifying the issues before the court. And tribes have understandably disliked Lewis v. Clark. It revolutionized and clarified, added great clarity to when you can bring these claims against individual defendants who also happen to be tribal employees, and they didn't mince words. If it's an individual capacity suit and you're seeking damages against the individual, it's simply not covered by sovereign immunity. Turning to the absolute immunity argument. Your friend, excuse me for interrupting, your friend referred to several paragraphs in the First Amendment complaint, as you mentioned a moment ago. Paragraph 325 says the Washoe tribe outlined many of these incidents in Irwine's termination paperwork that it used as justification to terminate Irwine. It. What's the it? It has to be the Washoe tribe. Admitted, Your Honor. It sounds like you're arguing now, well, what I really meant was these individuals, the chief, the deputy chief, et cetera, they terminated him. And it sounds like you're saying, well, I'm not sure what you're saying. They were following tribal policies or tribal policies were fine and they were bad apples who were acting not in accordance with the policies and tortiously violating your client's rights, as you've alleged in several accounts in your complaint. Which are you saying? I'm saying it's not the tribe. It's the individual defendants. But the tribes as employees of the defendants caused Mr. Irwine to be terminated from the tribe. Well, don't you need to amend your complaint? I may need to do that, Your Honor. Well, so what do we do at this point? This is the First Amendment complaint. You've done it once. Yes, Your Honor. I think that remand on the sovereign immunity issue is the appropriate remedy at this point because that's the basis upon which the district court made its decision. And I'd like to circle back to the sovereign immunity slash absolute immunity argument. I mean, I think we're kind of comparing apples and oranges here. Sovereign immunity is one thing. Tribes can't be sued. No one disputes that. Absolute immunity is a distinct legal concept, the contours of which have been outlined in federal and state law. It applies to certain types of actors. A tribe simply saying, well, you know, Lewis v. Clark said we can't confer sovereign immunity to our employees, so we're going to confer blanket absolute immunity on everything they do is a misuse of the concept. Can they confer absolute immunity on tribal judges, tribal prosecutors, the president of the tribe, you know, all the other police, tribal police testifying? Of course they can. That's consistent with the concept, which is what the really the holding in Davis v. Fletchell is really about in our mind. And lastly, I think Lewis v. Clark made clear in discussing Davis that sovereign immunities don't preclude the application of personal immunities, absolute immunity where appropriate for individual defendants, qualified immunity. But to say that a government entity can confer a blanket absolute immunity, personal immunity on all of its employees for all circumstances at all times is inconsistent with the case and the concept,  I'd be glad to answer any more questions you have, but I think I've run out of things to say. All right. We thank counsel for their arguments. The case just argued is submitted. My understanding is our law clerks are going to talk to the students. Is that right? So we are going to conference and we will join you either in the discussion or for lunch as soon as we possibly can. And with that, we are adjourned.
judges: BENNETT, SANCHEZ, Holcomb